IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TIM WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | No. 3:16cv139 |
| VS. | § | |
| | § | Jury Trial Demanded |
| UPCHURCH INDUSTRIAL, LLC, | § | |
| | § | |
| Defendant. | § | |

**<u>PLAINTIFF'S RESPONSE TO MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff files this Response to Defendant's Motion for Summary Judgment (Doc. 12).

I.   <u>Overview</u>

Mr. Williams was a welder for Upchurch. He was 59 years old at the time of the events in question, and he had a crushed right hand and forearm from a previous incident. In late February or early March of 2015, a co-worker overheard the project manager (Jeff Williams) stating that he was going to fire the "old welder with the bum hand." Three days later, Upchurch terminated him.

Upchurch bases its motion on the premise that it was <u>forced</u> to fire Mr. Williams because the certified welding inspector (CWI) rejected Mr. Williams' welds and revoked Mr. Williams' stamp (which authorized him to work as a welder on the project). However:

(1)   Mr. Williams has testified that his welds were approved.

(2)   Upchurch offers no evidence that the welds were not approved or that the stamp was revoked. Upchurch has no records to prove that this happened, and in fact the only documentation provided by Upchurch relates to unrelated welds that were completed a month earlier.

1

(3) In fact, Upchurch carefully crafts its summary judgment evidence to <u>imply</u> that the welds were not approved and that the stamp was revoked, but its witnesses never actually <u>swear</u> that this happened.

Accordingly, the summary judgment evidence refutes the basis for Upchurch's motion. At a minimum, there is a genuine issue of material fact.

Upchurch also presents evidence from the project manager in which he claims that he might have been misunderstood when he made the "old welder with the bum hand" comment. At most, this raises an issue of fact for trial.

II. <u>The Evidence Refutes Upchurch's Claim That the CWI Rejected the Welds</u>.

Mr. Williams testified at length about the events leading up to his termination. In fact, this testimony is contained in Upchurch's own summary judgment evidence (Exhibit B to the Motion):

> That's when [co-worker Bubba Emerson] told me that when the project manager, Jeff Williams, was visiting a few days before that . . . he said he overheard him say or he told him, yeah, that **he was going to have to fire the old welder with the bum hand**. He thinks he's going to have to fire the old welder with the bum hand.
>
> . . . .
>
> . . . [W]hen [superintendent Ricky May] called me in, he says, Tim, he says, you're going to have to -- you've got one more chance to make me a better looking weld or I'm going to have to let you go.
>
> And so I said, well, okay. And I run out there and welded all that day on a weld, busted my butt. **QC come out and looked at it, inspected it, stamped it as approval**. And so I felt -- I felt like I saved my job. I come in the next morning, Michael Crabtree said -- I started to get my tools out, and he said, you've got to go to Mr. May's office, Ricky May's -- May's office.
>
> So I went over there and he said, I'm sorry, but **I'm going to have to terminate you for poor performance. And I said, what do you mean, Ricky? The weld passed.**

2

> **Well, it took you too long or something. And he -- by the way, he told me to take my time on it. He said take your time, just get me a good weld. He couldn't look me in the eye.** He said he hated to do it and all that.
>
> I tried to -- I said, well, okay, how about I can do some other things, pipefitting or operating stuff. He wouldn't looked me in the eye. He just kept shaking his head. I hate to do this. He had the papers in his hands. He said, I'm going to have to terminate you for poor performance.

Williams Dep. at 98-100 (emphasis added).

Upchurch now claims that "Williams was terminated from his position as a welder for a legitimate, non-discriminatory reason – a Certified Welding Inspector ("CWI") found that his welds did not meet the required standards for the project he was working on." Motion at 2. But Upchurch offers no evidence that this really happened. In fact, Upchurch's summary judgment evidence carefully avoids the issue.

The declaration of David Upchurch (Exhibit A to the Motion), the president of the company, contains a generic discussion of welding standards and the like. But when it comes to Mr. Williams, he has nothing to say. The closest he comes is this:

> There was a great deal of employee turnover on the Tenaris project. Many welders did not pass inspections. Welders whose stamps were revoked were terminated from employment because they could no longer perform their job duties. Many welders resigned or stopped showing up to work when they suspected their stamp was about to be revoked to avoid being terminated involuntarily.

Upchurch Decl. ¶ 8. There is no mention of Mr. Williams.

Jeff Williams, the project manager, crafts his declaration (Exhibit C to the Motion) to <u>imply</u> that the CWI rejected the welds and revoked the stamp, but he never actually says that this happened:

> 12. At some point at the end of February or beginning of March 2015, I learned that the CWI was about to pull Tim and Bubba's stamps because of deficient weld quality. Since Tim and Bubba were new, we asked the CWI to give them an opportunity to practice because Tim and Bubba were good guys. They didn't improve, so Ricky May, the superintendent, was going to have to let them go.

> 13. . . . I thought [Tim] was a good guy, and I hated to see him have to go. But the decision was made by the CWI according to the B31-3 standard, and there was nothing we could do about it. The CWI operated by the welding code for this project and it was the same for everyone. The CWI's decisions were based only on the work and quality of welds.

If the CWI had really rejected the welds and revoked Mr. Williams' stamp, then Jeff Williams should have been able to say so. More importantly, he should have been able to provide **records** that this actually happened. Instead, he just implies that it happened and provides no indication that he actually knows one way or the other.

The lack of records is brought into focus by the declaration of Krystal Everett, the controller of Upchurch (Exhibit D to the Motion). Exhibit B to the declaration is a document that Upchurch claims is proof that Mr. Williams' welds were rejected. However, the document shows that the welds in question were completed on February 6 and 7, 2015. As shown by Exhibit C to the declaration, Mr. Williams was fired on March 4, 2015. This was almost a month after the welds shown in the document. **The welds shown in the exhibit to Ms. Everett's declaration are not, and could not possibly be, the welds for which Mr. Williams was supposedly fired.**

Furthermore, Exhibit C to the Everett Declaration states that the reason for the termination was "Unsatisfactory Performance." This is consistent with Mr. Williams' testimony. Upchurch has failed to produce any document – either as summary judgment evidence or in discovery – suggesting that the reason for Mr. Williams' termination was the revocation of his welder's stamp.

It should be apparent that Upchurch's attempt to blame the CWI for Mr. Williams' termination is a story that was made up after the fact. It is not credible that Upchurch would have no record that the welds in question were rejected by the CWI and that the only record it can produce is a spreadsheet describing other welds. At a minimum, there should be documentation showing that Mr. Williams' stamp was really revoked. Yet there is nothing.

4

For present purposes, it is sufficient to note that Mr. Williams' deposition testimony raises a genuine issue of material fact. In fact, it is far from clear whether Upchurch can even raise a triable issue of fact on this subject.

III. <u>Upchurch's Legal Arguments Are Without Merit</u>.

Given that all of Upchurch's legal arguments are based on the false premise that the CWI revoked Mr. Williams' stamp, those arguments may be disposed of easily.

    A. <u>Direct Evidence/Stray Remarks</u>

Upchurch offers a couple pages of briefing about "direct evidence" and the "stray remark" rule. Motion at 12-13. In the end, however, the only argument that Upchurch makes is that "Jeff W. – the individual who allegedly make the [old welder with a bum hand] remark – had no control over the CWI's decision to revoke Williams' stamp." Motion at 13. As discussed above, there is no evidence that the CWI revoked the stamp. Upchurch's argument is thus immaterial.

In passing, we note that Upchurch is relying on older case law about stray remarks. Over the past few years, the Fifth Circuit has clarified the law on this subject. In a 2015 opinion by Judge Costa, the Fifth Circuit explained the law, distinguishing between direct evidence and circumstantial evidence:

> This issue requires us to again emphasize the two different contexts in which we evaluate so-called "stray remarks" evincing discrimination.
>
> The *CSC Logic* test that NOV invokes requires that any ageist remark be proximate in time to the terminations, made by an individual with authority over the employment decision, and related to the challenged decision. That more demanding test applies, however, only when the remarks are being used as direct evidence of discrimination. Such a case is analyzed outside the more common *McDonnell-Douglas* framework, as the comments are being relied on to prove the entire case of discrimination. We thus allow such comments to defeat summary judgment—that is to serve as sufficient evidence that by itself would allow a jury to find discriminatory motive—only if they are not stray, but instead are tied to the adverse employment action at issue both in terms of when and by whom they were made.

5

> In a circumstantial case like this one, in which the discriminatory remarks are just one ingredient in the overall evidentiary mix, we consider the remarks under a "more flexible" standard. To be relevant evidence considered as part of a broader circumstantial case, "the comments must show: '(1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'" The district court properly found that comments allegedly made by Goudeau's supervisor about, among other things, "old farts" and Goudeau wearing "old man clothes" easily meet this less stringent standard.

*Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475-76 (5th Cir. 2015) (citations omitted). The "old welder with a bum hand" comment meets the direct evidence standard, because it was proximate in time to the termination, was made by a person with authority over the employment decision (Jeff Williams actually signed the termination form that is attached to Ms. Everett's declaration), and related to the challenged decision. It also meets the less stringent standard for circumstantial evidence, in that it shows discriminatory animus.[1]

In his declaration, Jeff Williams tries to explain away his comment. J. Williams Decl. ¶ 13. Of course, at the summary judgment stage, credibility issues are not ripe for determination. The jury will have an opportunity to decide whether it accepts Jeff Williams' explanation.

B. <u>Prima Facie Case</u>

To the extent that the Court views this as a circumstantial evidence case, the familiar *McDonnell Douglas* framework applies. Although Upchurch refers in passing to the various elements of the framework, it makes only two actual arguments.

First, Upchurch argues that Mr. Williams was not "qualified" because "the CWI took his stamp away." Motion at 16-17. As discussed above, Mr. Williams testified that this did not

---

[1] In a footnote, Upchurch claims that the comment is hearsay because it was told to Mr. Williams by Bubba Emerson, a co-worker. Motion at 13 n.2. This, of course, is wrong. Fed. R. Evid. 801(d)(2)(D).

happen, and Upchurch has no summary judgment evidence or records to raise even a fact issue on the matter. On the contrary, Upchurch's records show that Mr. Williams was fired for "Unsatisfactory Performance," not because he lost his stamp.

Second, Upchurch argues that Mr. Williams cannot show that he was replaced by a younger employee. Motion at 17. While this is literally true, Mr. Williams can establish a prima face case by presenting other evidence of age discrimination. As discussed above in connection with the *Goudreau* case, the "old welder with a bum hand" comment is sufficient to establish a prima facie case.

Upchurch makes no other arguments relating to the *McDonnell Douglas* framework. As a general matter, it should be apparent that there is at least a triable issue for the jury. Upchurch's project manager announced that he was going to fire "the old welder with the bum hand," and three days later Mr. Williams was fired. Upchurch told Mr. Williams that he was being fired for poor performance, and in fact that is what Upchurch documented in its files. After Mr. Williams asserted a discrimination claim, Upchurch abruptly pivoted and claimed that it had no choice but to fire Mr. Williams because the CWI had revoked his stamp. Yet Upchurch cannot prove that this actually happened, and its documentation relates to an unrelated weld several weeks earlier. The jury will be entitled to conclude that Upchurch's shifting explanations and lack of records, and in general the falsity of its story, support a verdict for Mr. Williams.

IV. Conclusion

For the foregoing reasons, the Court should deny Upchurch's motion.

        Respectfully submitted,

        /s/ David C. Holmes
        David C. Holmes, Attorney in Charge
        State Bar No. 09907150
        Southern District No. 5494
        13201 Northwest Freeway, Suite 800
        Houston, Texas 77040
        Telephone: 713-586-8862
        Fax: 713-586-8863

        ATTORNEY FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

      I certify that a copy of this document was served electronically on counsel for Defendant on May 12, 2017.

        /s/ David C. Holmes